[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On March 18, 1996, the plaintiff, Nicholas Meola, filed a seven count complaint. Process was properly served by the plaintiff on the defendants, Eagle Snacks Corporation [sic] (Eagle Snacks),[1] Frank Parker, III (Parker) and Yvonne Augustitus (Augustitus). On August 26, 1996, the plaintiff filed a fifteen count revised complaint in response to the defendants' requests to revise.[2]
In his complaint, the plaintiff alleges the following undisputed facts. From August, 1993 until June, 1996, the plaintiff worked for Parker as general manager of distribution for Parker's company, Electra Snacks Corporation in Bridgeport (Electra Snacks). Parker owned the company. Augustitus was employed by Electra Snacks during the time the plaintiff worked there. Electra Snacks distributed Eagle Snacks' products in Connecticut.
The plaintiff filed his complaint after his employment with Electra Snacks terminated on June 16, 1996. The contested allegations in the plaintiff's complaint are that: (1) the plaintiff was never given a reason for his termination; (2) Parker told a third party that the plaintiff sold Electra Snacks' products in an unauthorized manner and kept a share of the profits therefrom; (3) the month before the plaintiff's employment with Electra Snacks terminated, Parker offered to sell Electra Snacks to the plaintiff for one dollar, plus an additional $30,000 for all of the depreciated assets of the company; (4) Eagle Snacks was aware of Parker's offer to sell the business to the plaintiff; (5) Eagle Snacks' agent, CT Page 10877 Edward Mangine, agreed to facilitate the plaintiff taking over Electra Snacks; and (6) Augustitus spread rumors about the plaintiff's improper conduct while he was employed at Electra Snacks.
On February 29, 2000, Eagle Snacks filed its motion for summary judgment on count eleven of the complaint alleging breach of promise; count twelve of the complaint alleging intentional infliction of emotional distress; count thirteen of the complaint alleging negligent infliction of emotional distress; count fourteen of the complaint alleging defamation; and count fifteen of the complaint alleging tortious interference with business relations.[3]
On March 6, 2000, Parker and Augustitus filed their motion for summary judgment on count one of the complaint alleging wrongful discharge against Parker; count two of the complaint alleging breach of the covenant of good faith and fair dealing against Parker; count three of the complaint alleging breach of a promise against Parker; count four of the complaint alleging intentional infliction of emotional distress against Parker; count five of the complaint alleging negligent infliction of emotional distress against Parker; count six of the complaint alleging defamation against Parker; count seven of the complaint alleging tortious interference with business expectations against Parker; count eight of the complaint alleging intentional infliction of emotional distress against Augustitus; count nine of the complaint alleging negligent infliction of emotional distress against Augustitus; and count ten of the complaint alleging defamation against Augustitus.[4]
On May 8, 2000, the plaintiff filed his objection to Eagle Snacks' motion for summary judgment, arguing that his complaint raises genuine issues of material fact and that summary judgment, as a matter of law, must be denied as to counts eleven through thirteen and fifteen of the plaintiff's complaint. The plaintiff withdraws the fourteenth count sounding in defamation against Eagle Snacks. The plaintiff's motion in Opposition to Eagle Snacks' motion for summary judgment is accompanied by a memorandum of law in support of the plaintiff's motion and the plaintiff refers to Exhibits A-G, relied on and attached to the plaintiff's May 12, 2000 motion in opposition to the individual defendants' motion for summary judgment.
On May 12, 2000, the plaintiff filed an objection to the individual defendants' motion for summary judgment, arguing that his complaint raises genuine issues of material fact and that summary judgment, as a matter of law, must be denied as to counts one through ten of the plaintiff's complaint.[5]
On May 15, 2000, the court heard oral argument on the defendants' CT Page 10878 motions for summary judgment.
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . ." (Citation omitted; internal quotation marks omitted.) Appleton v. Board of Education, 254 Conn. 205, 209, ___ A.2d ___ (2000). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. 2 (Citations omitted.) Id.
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . ." Id. Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." Miller v. United Technologies Corp.,233 Conn. 732, 751, 660 A.2d 810 (1995).
Count Two — Breach of the Covenant of Good Faith and Fair Dealing(Parker)
In count two of the complaint, the plaintiff alleges breach of the covenant of good faith and fair dealing in conjunction with the plaintiff's alleged wrongful discharge claim in count one.[6] Parker moves for summary judgment on count two of the complaint on the ground that the plaintiff's claim fails as a matter of law or completely lacks evidentiary support. Specifically, Parker argues that if the plaintiff's wrongful discharge claim fails to survive the motion for summary judgment, then his claim for the breach of the covenant of good faith and fair dealing also cannot survive the motion. In his memorandum in opposition, the plaintiff argues that Parker's actions associated with terminating the plaintiff's employment constitutes a breach of the covenant of good faith and fair dealing.
"In Magnan v. Anaconda Industries, Inc., 193 Conn. 558, 479 A.2d 781
(1984), our Supreme Court addressed the issue of whether the doctrine of an implied covenant of good faith and fair dealing is applicable to the termination of an employment contract. . . . The Magnan court accepted the principle that implied in every contract of employment is a covenant of good faith and fair dealing in the contractual relationship. . . ."Doherty v. Sullivan, 29 Conn. App. 736, 742, 618 A.2d 56 (1992). Connecticut's appellate courts limited the reach of the covenant of good faith and fair dealing in the employment context in finding that "`[w]here employment is clearly terminable at will, a party cannot CT Page 10879 ordinarily be deemed to lack good faith in exercising this contractual right. . . . We see no reason presently, therefore, to enlarge the circumstances under which an at-will employee may successfully challenge his dismissal beyond the situation where the reason for his discharge involves impropriety . . . derived from some important violation of public policy.'" (Citation omitted; internal quotation marks omitted.) Id., 742-43, quoting Magnan v. Anaconda Industries, Inc., 193 Conn. 558,572, 479 A.2d 781 (1984).
In his memorandum in opposition, the plaintiff avers that Parker acted in bad faith in his treatment of the plaintiff in the course of terminating the plaintiff's employment. The plaintiff, however, fails to plead or offer proof that he was terminated in contravention of a public policy. Therefore, "absent a showing that the discharge involves an impropriety which contravenes some important public policy, an employee may not challenge a dismissal based upon an implied covenant of good faith and fair dealing." Carbone v. Atlantic Richfield Co., 204 Conn. 460,470-71, 528 A.2d 1137 (1987); see also Seery v. Yale-New Haven Hospital,17 Conn. App. 532, 543, 554 A.2d 757 (1989) (where court found that, in the absence of a public policy violation, there is no breach of the implied covenant of good faith and fair dealing). Accordingly, summary judgment is granted in favor of Parker on count two of the plaintiff's complaint.[7]
Count Three — Breach of Promise (Parker)
In count three of the complaint, the plaintiff alleges that Parker breached his promise to sell Electra Snacks to the plaintiff, causing the plaintiff to suffer severe economic losses. Parker moves for summary judgment on count three on the ground that the plaintiff's claim must fail as a matter of law or completely lacks evidentiary support. Specifically, Parker denies ever promising to sell Electra Snacks to the plaintiff. Parker further avers that, even if the actions alleged by the plaintiff could be construed as an offer that was accepted by the plaintiff, no consideration was given for the contract and there was no meeting of the minds on material terms of the alleged contract. In the plaintiff's deposition testimony, the plaintiff acknowledges that he never paid anything toward the purchase of Electra Snacks. (Memorandum of law in support of defendants' motion, Exh. A, pp. 159-60.) In his memorandum in opposition, the plaintiff avers that, in rendering summary judgment on count three of his complaint, the court would have to improperly make an adverse credibility determination against the plaintiff and decide questions of fact properly left for the fact finder.
"`The existence of a contract is a question of fact to be determined by the trier on the basis of all the evidence.'" Avon Meadow Condo. Assn.,CT Page 10880Inc. v. BK., Boston CT., 50 Conn. App. 688, 695, 719 A.2d 66 (1998), quoting Fortier v. Newington Group Inc., 30 Conn. App. 505, 509,620 A.2d 1321, cert. denied, 225 Conn. 922, 625 A.2d 823 (1993); see alsoUnion Trust Co. v. Jackson, 42 Conn. App. 413, 419, 679 A.2d 421 (1996) ("question of whether the parties had an oral contract is material, if, and only if, a trier of fact were to find that there was an oral agreement"). A motion for summary judgment is properly granted only where no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law. Dept. of Social Services v. Saunders,
supra, 247 Conn. 696.
The parties' motions and supporting documents raise the following questions of fact, which militate against a finding, as a matter of law, that the plaintiff and Parker failed to enter into an agreement. The plaintiff alleges that he had an agreement with Parker for the sale of Electra Snacks to the plaintiff. Parker denies ever promising to sell Electra Snacks to the plaintiff and points to portions of the plaintiff's sworn deposition testimony where he claims that the plaintiff admits that he did not have such an agreement. (See, e.g., memorandum of law in support of defendants' motion, Exh. A, p. 146, 11, 5-6 where the plaintiff states "I thought I was well on my way to owning the business, but I don't think I owned the business; Exh. A., p. 154, 11, 20-21 where the plaintiff states "[t]hat I would be the future owner of Electra Snacks"; Exh. A, pp. 195-96 where the plaintiff discusses actions of Parker which made the plaintiff believe the two had reached an agreement regarding the purchase of Electra Snacks.) These excerpts from the plaintiff's sworn deposition testimony, however, support the plaintiff's contention that Parker promised to sell him Electra Snacks and that the plaintiff knew other steps were necessary to finalize the sale.
Parker also points to the master distributor agreement, attached as Exhibit G to the defendants' memorandum in support of their motion for summary judgment, wherein Eagle Snacks had approval rights over any transfer in ownership of Electra Snacks. Parker contends that the plaintiff knew that any sale to him would require Eagle Snacks approval and that the plaintiff also knew he never received such approval from Eagle Snacks. (Memorandum of law in support of defendants' motion, Exh. A, pp. 160; 146-150; 182-183; 189.) These portions of the plaintiff's sworn deposition testimony merely show that the plaintiff awaited Eagle Snacks' approval of the sale of Electra Snacks to him. The excerpts do not, as Parker argues, show that the plaintiff did not have an agreement with Parker regarding the sale of the business.
Finally, Parker argues that, because the plaintiff did not rely on the alleged promise to sell him Electra Snacks to his detriment, he cannot successfully bring a claim for promissory estoppel. "A contract implied CT Page 10881 in fact, like an express contract, depends on actual agreement. . . . An implied contract may be enforceable under the doctrine of promissory estoppel in order to avoid injustice to [a person] who has detrimentally relied on "a clear and definite promise which a promisor could reasonably have expected to induce reliance' by the promisee. D'Ulisse-Cupo v. Boardof Directors of Notre Dame High School, 202 Conn. 206, 213, 520 A.2d 217
(1987). To prevail on such a claim, the [person] must prove by a fair preponderance of the evidence that the employer agreed, `either by words or action or conduct, to undertake [some] form of actual contract commitment' to the [person]. . . ." (Citation omitted; internal quotation marks omitted.) Pavliscak v. Bridgeport Hospital, 48 Conn. App. 580,593, 711 A.2d 747, cert. denied, 245 Conn. 911, 718 A.2d 17 (1998).
In count three of his complaint, the plaintiff alleges an express promise by Parker to sell him Electra Snacks, which promise the plaintiff claims Parker breached. Thus, the plaintiff need not plead nor prove promissory estoppel, which applies to implied contracts. D'Ulisse-Cupo v.Board of Directors of Notre Dame High School, supra, 202 Conn. 213. Furthermore, "a party may plead alternative and even inconsistent theories in the same action." Marrin v. Spearow, 35 Conn. App. 398. 401,646 A.2d 254 (1994); Practice Book § 10-25. Thus, "[a] true implied contract can only exist where there is no express one. It is one which is inferred from the conduct of the parties though not expressed in words. . . . It is not fatal to a finding of an implied contract that there were no express manifestations of mutual assent if the parties, by their conduct, recognized the existence of contractual obligations. . . . Whether and on what terms a contractual commitment has been undertaken are ultimately questions of fact which, like any other findings of fact, may be overturned only if the trial court's determinations are clearly erroneous. . . . (Citation omitted; internal quotation marks omitted.)Sandella v. Dick Corp., 53 Conn. App. 213, 219, 729 A.2d 813, cert. denied, 249 Conn. 926, 733 A.2d 849 (1999).
Accordingly, because the parties' pleadings and proof raise genuine issues of material fact as to whether the plaintiff and Parker had an agreement or what the terms of that agreement were, Parker's motion for summary judgment is denied on count three of the plaintiff's complaint.[8]
Count Four — Intentional Infliction of Emotional Distress marker)
Count four of the complaint sounds in intentional infliction of emotional distress. Parker moves for summary judgment on the ground that count four must fail as a matter of law or completely lacks evidentiary support. Specifically, Parker argues that he terminated the plaintiff's employment because he wanted to close his business. (Memorandum of law in CT Page 10882 support of defendants' motion, Exh. D, State of Connecticut Notice of Hearing and Unemployment Compensation Claim, employer's reason for separation.) Parker further contends that he did not intend to cause emotional distress by discharging the plaintiff, nor did he act in an extreme and outrageous manner in terminating the plaintiff's employment with Electra Snacks. Finally, Parker argues that the plaintiff fails to allege injuries to support his claim for intentional infliction of emotional distress.
"In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . ." (Citations omitted; internal quotation marks omitted.) Appleton v. Board of Education, supra,254 Conn. 210. "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. . . . Thus, [i]t is the intent to cause injury that is the gravamen of the tort. . . . Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy . . . these elements is a question, in the first instance, for [the] court." (Citations omitted; internal quotation marks omitted.). Ancona v. Manafort Bros., Inc., 56 Conn. App. 701,711-12, 746 A.2d 184, cert. denied, 252 Conn. 954, ___ A.2d ___ (2000); see also Bell v. Board of Education, 55 Conn. App. 400, 409-10,739 A.2d 321 (1999).
The plaintiff alleges two actions that give rise to the tort. The first action involves Parker undermining the plaintiff's managerial authority through a constant campaign of rumors, half-truths, and innuendos throughout the tenure of the plaintiff's employment with Electra Snacks. Parker points to the certified copy of the plaintiff's sworn deposition testimony, wherein the plaintiff states that, while working at Electra Snacks, there were never any rumors or lies generated. (Memorandum of law in support of defendants' motion, Exh. A, p. 241, 1. 20.) The plaintiff thereby contradicts his allegation that Parker undermined his managerial authority throughout the tenure of his employment with Electra Snacks, which could only have occurred when the plaintiff was employed by Parker.
The plaintiff, however, further alleges that Parker's actions associated with the termination of the plaintiff's employment also gives CT Page 10883 rise to his claim for intentional infliction of emotional distress. In his memorandum in opposition to Parker's motion, the plaintiff claims that when Parker informed him that his employment with Electra Snacks was terminated, the plaintiff was given ten minutes to get his things and leave the office; was escorted from the premises by a security guard; when he asked for his check, Parker wrote him a check and threw it at him; the defendant refused to pay him a bonus or for vacation; and he had to leave behind a number of his personal belongings. (Memorandum of law in opposition to defendants' motion, Exh. B, certified copy of plaintiff's sworn deposition testimony, pp. 80-92, 220.)
Two recent Connecticut Supreme Court cases are helpful in deciding whether the plaintiff's pleadings and proof support his claim for intentional infliction of emotional distress against Parker. In Parsonsv. United Technologies Corp., 243 Conn. 66, 89, 700 A.2d 655 (1997), the Connecticut Supreme Court upheld the trial court's finding that "the defendant was not required to suffer a waiting period in excess of two hours before terminating the plaintiff's employment [because] the plaintiff was an at-will employee [and thus] his employment could be terminated at any time." (Internal quotation marks omitted.) Id. The court further found that "it is not patently unreasonable for an employer to remove a discharged employee from its premises under a security escort." Id., citing Toth v. Square D. Co., 712 F. Sup. 1231, 1238
(D.S.C. 1989) (not unreasonable for employer to escort former employee off premises after termination of employment, and such action does not provide basis for intentional infliction of emotional distress claim.) (Emphasis added.)
More recently, the Connecticut Supreme Court reversed the Appellate Court's decision in Appleton v. Board of Education, 53 Conn. App. 252,730 A.2d 88 (1999) to overturn the trial court's grant of summary judgment for the defendants on the plaintiff's intentional infliction of emotional distress claim. Appleton v. Board of Education, supra,254 Conn. 212. The Connecticut Supreme Court found that Appleton's allegations that one of the defendants "`made condescending comments to [her] in front of [her] fellow colleagues questioning [her] vision and ability to read'; telephoned the plaintiff's daughter, representing that the plaintiff "had been acting differently' and should take a few days off from work; and telephoned the police, who came to the school and escorted the plaintiff out of the building to her car" did not rise to the level of extreme and outrageous conduct needed to successfully state a claim for intentional infliction of emotional distress. Id., 211.
"Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly CT Page 10884 intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!' 1 Restatement (Second), Torts § 46, comment (d), p. 73 (1965). Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress. . . ." Id.
In the present case, the plaintiff fails to allege facts or provide evidence that Parker's actions in terminating the plaintiff's employment were so atrocious as to exceed all bounds usually tolerated by decent society.
Finally, Parker urges the court to grant his motion because the plaintiff fails to allege or offer evidence that he sought medical treatment for his alleged severe emotional distress. In Lilly v.Hartford, Superior Court, judicial district of Hartford at Hartford, Docket No. 533577 (November 19, 1998, Fineberg, J.), the court granted the defendant's motion for summary judgment on the plaintiff's intentional infliction of emotional distress claim partly because the plaintiff failed to seek medical attention for his condition. Id., citingReed v. Signode Corp., 652 F. Sup. 1229 (D. Conn. 1986) (where court granted motion for summary judgment on the plaintiff's intentional infliction of emotional distress claim, in part on the issue of severity, noting that it was significant that the "[p]laintiff was neither treated nor did he seek medical assistance for the distress he allegedly suffered").
The plaintiff in the present case fails to allege or provide proof that he sought medical assistance for the emotional distress he allegedly suffered. In his opposition to Parker's motion for summary judgment, the plaintiff cites two out-of-state cases in support of his contention that evidence or manifestation of physical injury is not a required element for a claim of intentional infliction of emotional distress. Connecticut law on intentional infliction of emotional distress is determinative of the conclusion that Parker is entitled to summary judgment as a matter of law on count four of the complaint.
Thus, in response to Parker's arguments in his motion for summary judgment, the plaintiff fails to meet his burden of raising a genuine issue of material fact that Parker's behavior in terminating the plaintiff's employment was so atrocious it exceeded all bounds usually tolerated by decent society. Furthermore, the plaintiff fails to allege or offer proof that he sought medical treatment for alleged severe distress. Accordingly, Parker's motion for summary judgment on count four CT Page 10885 of the complaint be granted.
Count Five — Negligent Infliction of Emotional Distress (Parker)
Count five of the complaint sounds in negligent infliction of emotional distress. The plaintiff alleges the same facts as in count four. Parker moves for summary judgment on the ground that the plaintiff's claim for negligent infliction of emotional distress fails as a matter or law or completely lacks evidentiary support. Parker only raises the arguments he raised for the intentional infliction of emotional distress claim in count four.
The Connecticut appellate courts "first recognized a cause of action for negligent infliction of emotional distress in Montinieri v. SouthernNew England Telephone Co., 175 Conn. 337, 345, 398 A.2d 1180 (1978). . . . [I]n order to state such a claim, the plaintiff has the burden of pleading that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm.' Id.; see also Morris v. Hartford Courant Co., 200 Conn. [676,] 683-84 [, 513 A.2d 66 (1986)]; 2 restatement (Second), Torts § 313 (1965)."Parsons v. United Technologies Corp., supra, 243 Conn. 88. "Connecticut has long recognized the tort claim for negligent infliction of emotional distress without requiring an accompanying physical injury. . . ." Moorev. Continental Casualty Co., 252 Conn. 405, 415, 746 A.2d 1252 (2000); see also Clohessy v. Bachelor, 237 Conn. 31, 46, 675 A.2d 852 (1996);Montinieri v. Southern New England Telephone Co., supra, 175 Conn. 345;Urban v. Hartford Gas Co., 139 Conn. 301, 306, 93 A.2d 292 (1952).
The plaintiff avers that Parker engaged in behavior other than terminating his employment and having him escorted off the premises by a security guard. Similar behavior failed to survive a motion for summary judgment in Parsons. Parsons v. United Technologies Corp., supra,243 Conn. 88. Namely, the plaintiff points to his certified deposition testimony to bolster his allegations that when Parker informed him that his employment with Electra Snacks was terminated, the plaintiff was given ten minutes to get his things and leave the office; was escorted from the premises by a security guard; when he asked for his check, Parker wrote him a check and threw it at him; the defendant refused to pay him a bonus or for vacation; and he had to leave behind a number of his personal belongings. (Memorandum of law in opposition to defendants' motion, Exh. B, pp. 80-92, 220.)
Parker fails to provide proof to refute the plaintiff's allegations that Parker threw his check at him, failed to pay him a bonus or for vacation and refused to let the plaintiff collect his personal CT Page 10886 belongings. Rather, Parker argues that these actions fail to support the plaintiff's claim for intentional infliction of emotional distress. "As the party moving for summary judgment, the [moving party] is required to support its motion with supporting documentation, including affidavits."Heyman Associates No. 1 v. Insurance Co. of Pennsylvania, 231 Conn. 756,796, 653 A.2d 122 (1995); Practice Book § 17-45. "The movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . ." (Internal quotation marks omitted.) Miller v. United Technologies Corp.,
supra, 233 Conn. 751-52.
In his complaint, the plaintiff sets forth a cause of action for negligent infliction of emotional distress, stating that Parker's actions were such that he knew or should have known that he created an unreasonable risk of causing severe emotional distress to the plaintiff which may have resulted in his illness or bodily harm. Parker fails to support his motion for summary judgment with documents that refute the plaintiff's claims. The plaintiff raises genuine issues of material fact which militate against granting Parker's motion for summary judgment as a matter of law. Accordingly, Parker's motion as to count five of the complaint is denied.
Count Six — Defamation (Parker)
In count six of the complaint, the plaintiff alleges that the defendant, Parker, published to other employees his "erroneous beliefs that the plaintiff was engaged in improper conduct and/or that he was involved in duplicitous and/or unethical and/or unauthorized activity which brought into substantial question his professional integrity, was calculated to injure the plaintiff in his profession and/or business and as such was defamatory in nature." (Complaint, count six, ¶ 15.) The plaintiff further alleges that Parker's actions resulted in the plaintiff being held up to ridicule, as well as great personal and professional humiliation and the plaintiff experienced substantial economic losses and financial hardship. (Complaint, count six, ¶ 16.) Parker moves for summary judgment on count six of the complaint on the ground that the claim fails as a matter of law or lacks evidentiary support.
"`Defamation is made up of the twin torts of libel and slander — the one being, in general, written while the other in general is oral. . . ." W. Prosser and W. Keeton, Torts (5th ed. 1984) § 111, p. 771; see also Charles Parker Co. v. Silver City Crystal Co., 142 Conn. 605,611-12, 116 A.2d 440 (1955). "A prima facie case of defamation is made when the plaintiff demonstrates that: 1. [a] defamatory statement was made by the defendant; 2. [t]he defamatory statement identifies the plaintiff to a reasonable reader; 3. [t]he defamatory statement is CT Page 10887 published to a third person; and; 4. [t]he plaintiffs reputation suffers injury.'" (Brackets in original; internal quotation marks omitted.)Lizotte v. Welker, 45 Conn. Sup. 217, 220, 709 A.2d 50, aff'd,244 Conn. 156, 709 A.2d 1 (1998).
In his opposition to Parker's motion, the plaintiff cites to a comment in the Restatement (Second), Torts, which defines defamation. The plaintiff also refers to two court cases, without analyzing how these cases support his claim that Parker defamed him.[9] Finally, the plaintiff cites Exhibit E, his sworn affidavit, attached to his opposition to Parker's motion. In Exhibit E, the plaintiff states that he was "deeply saddened" when an Electra Snacks employee told him that he was terminated because he "made deals" and was "stealing" from Electra. The plaintiff further states in Exhibit E that he was informed by a number of individuals that "Parker and Augustitus had expressed to them" that the plaintiff had been terminated because he "made unauthorized deals" and "was curiously keeping large amounts of cash" in his office. The plaintiff offers no other proof to support his claim that Parker defamed him.
"Although the moving party [for summary judgment] has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue." Beers v.Bayliner Marine Corp., 236 Conn. 769, 771 n. 4, 675 A.2d 829 (1996);Delahunty v. Massachusetts Mutual Life Insurance Co., 236 Conn. 582, 588
n. 10, 674 A.2d 1290 (1996). "The existence of the genuine issue of material fact must be demonstrated by counter-affidavits and concrete evidence." 2830 Whitney Avenue Corp. v. Heritage Canal DevelopmentAssociates, Inc., 33 Conn. App. 563, 567, 636 A.2d 1377 (1994). "If the affidavits and the other supporting documents are inadequate, then the court is justified in granting the summary judgment, assuming that the movant has met his burden of proof." (Internal quotation marks omitted.) Id., 569.
In the present case, Parker, as the moving party for summary judgment, fails to meet his burden of proof in moving for summary judgment on count six of the complaint. Parker does nothing more than provide an affidavit in which he denies the plaintiff's allegations that Parker published to other employees his "erroneous beliefs that the plaintiff was engaged in improper conduct and/or that he was involved in duplicitous and/or unethical and/or unauthorized activity which brought into substantial question his professional integrity, was calculated to injure the plaintiff in his profession and/or business and as such was defamatory in nature." (Complaint, count six, ¶ 15.) Averments contained in an affidavit that are merely denials of the allegations in a complaint "are CT Page 10888 an insufficient basis for the rendition of summary judgment." Gambardellav. Kaoud, 38 Conn. App. 355, 360, 660 A.2d 877 (1995).
Thus, because Parker fails to offer any proof that no genuine issues of material fact exist or that he is entitled to judgment as a matter of law, Parker's motion for summary judgment is denied on count six of the complaint.
Count Seven — Tortious Interference with Business Relations (Parker)
In count seven of the complaint, the plaintiff alleges that Parker, after promising to sell Electra Snacks to the plaintiff, conspired to prevent the plaintiff from purchasing the business. The plaintiff contends that Parker interfered with his business expectations by not allowing the plaintiff in the building where Electra Snacks was previously located and barred the plaintiff's access to the necessary assets to operate the business.
Parker moves for summary judgment on count seven of the complaint on the ground that the plaintiff's claims must fail as a matter of law or completely lacks evidentiary support. Parker denies conspiring with anyone to prevent the plaintiff from purchasing the business. Parker further avers that the plaintiff's argument must fail, as a matter of law, because, as the owner of Electra Snacks, Parker cannot be found to have interfered with his own business arrangement. Finally, Parker argues that the plaintiff's claim for tortious interference with business relations must fail because the plaintiff fails to allege actions by Parker that satisfy the legal requirements for the tort.
Connecticut's appellate courts have "long recognized a cause of action for tortious interference with contract rights or other business relations. . . ." (Citation omitted.) Daley v. Aetna Life and CasualtyCo., 249 Conn. 766, 805, 734 A.2d 112 (1999). "`The agreement need not, however, be enforceable by the plaintiff as a contract . . . the law of course does not object to the voluntary performance of agreements merely because it will not enforce them, and it indulges in the assumption that even unenforceable promises will be carried out if no third person interferes.' [W.] Prosser, Torts (4th Ed.) § 129, p. 932."Wellington Systems, Inc. v. Redding Group, Inc., 49 Conn. App. 152,167-68, 714 A.2d 21, cert. denied, 247 Conn. 905, 720 A.2d 516 (1998).
"The essential elements of the tort of unlawful interference with a business relationship are (1) a business relationship between the plaintiff and another party, (2) the defendant's intentionally interfering with it while knowing of the relationship and (3) as a result of the interference, the plaintiff's suffering an actual loss." Dinapoli v.CT Page 10889Cooke, 43 Conn. App. 419, 426, 682 A.2d 603, cert. denied, 239 Conn. 951,686 A.2d 124 (1996), cert. denied, Cooke v. Dinapoli, ___ U.S. ___,117 S.Ct. 1699,137 L.Ed.2d 825 (1997). "However, it is well-settled that the tort of interference with contractual relations only lies when a third party adversely affects the contractual relations of two other parties. . . . (Emphasis in original.) (Citations omitted.) Wellington Systems,Inc. v. Redding Group, Inc., supra, 49 Conn. App. 168.
In his complaint, the plaintiff alleges that he had an agreement with Parker to buy his business and that Parker, himself, interfered with the agreement. The plaintiff fails to plead or prove that a third party interfered with the agreement. As a matter of law, tortious interference with contractual relations requires that a third party affect the contractual relations of two other parties. The plaintiff fails to counter Parker's argument that he is entitled to judgment as a matter of law on this count of the plaintiff's complaint by presenting any evidence which raises a genuine issue of material fact. Accordingly, Parker's motion for summary judgment is granted on count seven of the complaint.
Count Eight — Intentional Infliction of Emotional Distress(Augustitus)
In count eight of the complaint, the plaintiff alleges that Augustitus participated in the wrongful discharge of the plaintiff and that she actively participated in undermining the managerial authority of the plaintiff through a constant campaign of rumors, half-truths and innuendos throughout the tenure of plaintiff's employment. Augustitus moves for summary judgment on count eight on the ground that the plaintiff's claims fail as a matter of law or completely lacks evidentiary support.
The plaintiff withdrew his claim of wrongful discharge at oral argument on May 15, 2000, 50 that claim is no longer before the court. Furthermore, the plaintiff fails to allege facts about Augustitus' behavior that could be characterized as extreme and outrageous. As discussed in count four above, the plaintiff simply fails to allege that Augustitus' engaged in behavior so atrocious it exceeds all bounds usually tolerated by decent society. Furthermore, the plaintiff fails to provide any proof that he sought medical treatment for his alleged severe distress. Thus, the plaintiff is unable to raise any genuine issues of material fact, thereby precluding Augustitus from prevailing on her motion. Accordingly, Augustitus' motion for summary judgment is granted on count eight of the complaint.
Count Nine — Negligent Infliction of Emotional Distress (Augustitus)
In count nine of the complaint, the plaintiff alleges that Augustitus' CT Page 10890 actions, as alleged in paragraphs one through fourteen of count one, created an unreasonable risk of causing severe emotional distress to the plaintiff. The plaintiff further alleges that Augustitus knew, or should have known, that her actions would cause said severe emotional distress. Augustitus moves for summary judgment on count eight on the ground that the plaintiff's claims fail as a matter of law or completely lacks evidentiary support.
In count one, paragraphs one through fourteen, the plaintiff fails to allege any actions on the part of Augustitus. The only allegation made in the first fourteen paragraphs of the plaintiff's complaint about Augustitus is that she was employed by Eagle Snacks and where she resides. (Complaint, count one, ¶ 4.) In opposition to Augustitus' motion, the plaintiff cites a number of cases where the courts found negligent infliction of emotional distress, but fails to raise any issue of genuine fact regarding Augustitus' behavior which would give rise to negligent infliction of emotional distress.
There simply are no allegations or arguments about Augustitus' behavior before the court upon which to base a determination that a factual issue exists. The court "cannot look beyond the complaint for facts not alleged." Robert S. Weiss Associates, Inc. v. Weiderlight, 208 Conn. 525,537, 546 A.2d 216 (1988); Cavallo v. Derby Savings Bank, 188 Conn. 281,285-86, 449 A.2d 986 (1982). Accordingly, Augustitus' motion for summary judgment is granted on count nine of the complaint.
Count Ten — Defamation (Augustitus)
In count ten of the complaint, the plaintiff alleges that Augustitus published to other employees her "erroneous beliefs that the plaintiff was engaged in improper conduct and/or that he was involved in duplicitous activity which brought into substantial question his professional integrity, was calculated to injure the plaintiff in his profession and/or business and as such was defamatory in nature." (Complaint, count ten, ¶ 15.) The plaintiff further alleges that Augustitus' actions resulted in the plaintiff being held up to ridicule, as well as great personal and professional humiliation and the plaintiff experienced substantial economic losses and financial hardship. (Complaint, count ten, ¶ 16.) Augustitus moves for summary judgment on count eight on the ground that the plaintiff's claims fail as a matter of law or completely lacks evidentiary support.
The plaintiff simultaneously argues his claims for defamation against both Parker and Augustitus, citing to his own affidavit as proof that Augustitus defamed him. Augustitus merely offers her own affidavit, attached as Exhibit J to her memorandum of law in support of her motion CT Page 10891 for summary judgment, in which she denies the allegations made in the plaintiff's complaint.
In accordance with the discussion on count six above, the plaintiff sets forth a cause of action for defamation which is merely denied by Augustitus. Augustitus' mere denial is insufficient to demonstrate that there are no genuine issues of material fact or that she is entitled to judgment as a matter of law. Gambardella v. Kaoud, supra,38 Conn. App. 360. Therefore, Augustitus' motion for summary judgment is denied on count ten of the complaint.
Count Eleven — Breach of Promise (Eagle Snacks)
In count eleven of the complaint, the plaintiff alleges that Eagle Snacks, through its agent, Edward Mangine, promised to sell Electra Snacks to the plaintiff and to facilitate said sale through Eagle Snacks' agents, servants and/or employees. (Complaint, count eleven, ¶ 16.) Plaintiff further alleges that Eagle Snacks breached this promise.
Eagle Snacks moves for summary judgment on count eleven of the complaint on the ground that there is no genuine issue as to any material fact alleged in the complaint and that the court should enter a judgment in favor of Eagle Snacks. Eagle Snacks avers that, because it did not own Electra Snacks, it could not promise the plaintiff to sell it to him. Eagle Snacks points to the plaintiff's sworn deposition testimony in support of its argument that the plaintiff knew Eagle Snacks did not own Electra Snacks. (Memorandum of law in support of defendant's motion, Exh. C, p. 110, 11. 1-15.) Eagle Snacks further avers that the alleged promise "to facilitate" the sale of Electra Snacks to the plaintiff is too vague to constitute a mutual understanding between the parties.
"`The existence of a contract is a question of fact to be determined by the trier on the basis of all the evidence.'" Avon Meadow Condo. Assn.,Inc. v. Bk., Boston Ct., supra, 50 Conn. 695, quoting Fortier v.Newington Group Inc., 30 Conn. App. 505, 509, 620 A.2d 1321, cert. denied, 225 Conn. 922, 625 A.2d 823 (1993). As in the discussion above regarding count three of the complaint, the plaintiff's sworn deposition testimony relied on by Eagle Snacks in support of its motion raises as many questions as it answers. For example, Eagle Snacks also points to the master distributor agreement, attached as Exhibit B to David Poldoian's sworn affidavit, that provides Eagle Snacks the "right to approve all changes in ownership, sale, transfer or other disposition . . ." (David Poldoian's aff., Exh. B, p. 4, ¶ 3(d).) In his sworn deposition testimony, the plaintiff, while admitting he knows that Eagle Snacks did not own Electra Snacks, also states that Parker, representing Electra Snacks, agreed to sell the plaintiff the business and that Eagle CT Page 10892 Snacks agreed to the sale. (Memorandum of law in support of defendant's motion, Exh. B, p. 165, 11.9-15.)
Accordingly, because the parties' pleadings and proof merely raise, rather than dispel, questions of fact, Eagle Snacks' motion for summary judgment on count eleven of the plaintiff's complaint is denied.
Count Twelve — Intentional Infliction of Emotional Distress (EagleSnacks)
In count twelve of the complaint, the plaintiff alleges that Eagle Snacks, "through its agent, servant and/or employee, Edward Mangine, actively participated in the undermining of the managerial authority of the plaintiff through a constant campaign of rumors, half-truths and innuendos throughout the tenure of plaintiff's employment." (Complaint, count twelve, ¶ 17.) The plaintiff goes on to allege that these actions on the part of Eagle Snacks, through Edward Mangine, were extreme and outrageous and caused the plaintiff severe emotional distress. The plaintiff further alleges that Eagle Snacks, through Edward Mangine, participated in his wrongful termination, a claim the plaintiff withdrew at oral argument on May 15, 2000.
Eagle Snacks moves for summary judgment on count twelve of the complaint on the ground that there is no genuine issue as to any material fact in the complaint and the court should enter a judgment in favor of Eagle Snacks. Eagle Snacks argues that the record is devoid of any outrageous conduct. The plaintiff fails to either allege or meet his burden of proof that Eagle Snacks' behavior was extreme and outrageous. Eagle Snacks contends that, when asked to state specifically what conduct on the part of its agent, Edward Mangine, caused the plaintiff's emotional distress, the plaintiff could not state any conduct on the part of Mangine or Eagle Snacks. (Memorandum of law in support of defendant's motion, Exh. C, pp. 12-13.) The plaintiff argues that reasonable minds can differ about whether Eagle Snacks' conduct was extreme and outrageous, thus raising a question for a jury. The plaintiff fails to address the contradiction between the allegations in his complaint and his sworn deposition testimony where he could not state any conduct on the part of Eagle Snacks or its agent, Edward Mangine, that was extreme and outrageous.
"Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, CT Page 10893 "Outrageous!' 1 Restatement (Second), Torts § 46, comment (d), p. 73 (1965). Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress. . . ." Appleton v. Board of Education, supra, 254 Conn. 211.
Because the plaintiff fails to counter Eagle Snacks' proof that no genuine issue of fact exists regarding any conduct on its part which can be considered to be extreme or outrageous in support of his allegations in the complaint, that the court grant Eagle Snacks' motion for summary judgment on count twelve of the complaint is granted.
Count Thirteen — Negligent Infliction of Emotional Distress (EagleSnacks)
In count thirteen of the complaint, the plaintiff incorporates paragraphs one through fifteen of count one. The plaintiff alleges that Eagle Snacks' actions, through Edward Mangine, created an unreasonable risk of causing severe emotional distress to the plaintiff. (Complaint, count thirteen, ¶ 16). Finally, the plaintiff alleges that Eagle Snacks' actions, through Edward Mangine. in facilitating the discharge of the plaintiff, severely injured and embarrassed the plaintiff. Eagle Snacks moves for summary judgment on count thirteen on the ground that there is no genuine issue as to any material fact in the plaintiff's complaint and the court should enter judgment in favor of Eagle Snacks on count thirteen.
In count one, paragraphs one through fifteen, the plaintiff alleges that he was wrongfully terminated, but fails to allege that Eagle Snacks was in any way involved with the termination. The only allegation against Eagle Snacks in count one, other than its place of incorporation, is that Eagle Snacks was aware of the agreement between the defendant Parker and the plaintiff and that Eagle Snacks, through Edward Mangine, agreed to facilitate the sale. (Complaint, count one, ¶¶ 5, 15.) As he does in his opposition to Augustitus' motion, the plaintiff cites a number of cases where the courts found negligent infliction of emotional distress, but fails to raise any issue of genuine fact regarding Eagle Snacks' behavior which would give rise to negligent infliction of emotional distress.
The court "cannot look beyond the complaint for facts not alleged."Robert S. Weiss Associates, Inc. v. Weiderlight, 208 Conn. 525, 537,546 A.2d 216 (1988); Cavallo v. Derby Savings Bank, 188 Conn. 281,285-86, 449 A.2d 986 (1982). There are simply no allegations or arguments about Eagle Snacks' behavior before the court upon which to base a determination that a factual issue exists. Accordingly, Eagle Snacks' CT Page 10894 motion for summary judgment on count thirteen of the complaint is granted.
Count Fifteen — Tortious Interference with Business Relations(Eagle Snacks)
In count fifteen of the complaint, the plaintiff alleges that Eagle Snacks tortiously interfered with the plaintiff's contract with the defendant, Parker, to purchase Electra Snacks. The plaintiff alleges that Eagle Snacks, through Edward Mangine, first promised the plaintiff that he would be permitted to purchase Electra Snacks, but that Eagle Snacks then "surreptitiously" conspired with Parker to prevent the plaintiff from purchasing the business.
Eagle Snacks moves for summary judgment on the ground that there is no genuine issue as to any material fact in the complaint and the court should enter a judgment in its favor. Eagle Snacks argues that the plaintiff is unable to satisfy the elements needed to sustain a cause of action for tortious interference with business relations.
"[N]ot every act that disturbs a contract or business expectancy is actionable . . . [F]or a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously. . . . [A]n action for intentional interference with business relations . . . requires the plaintiff to plead and prove at least some improper motive or improper means. . . ." (Citations omitted; internal quotation marks omitted.) Daley v. AetnaLife Casualty Co., supra, 249 Conn. 805-06.
In opposition to Eagle Snacks' motion, the plaintiff argues that Eagle Snacks acted with improper motive by preventing him from performing under the contract he allegedly had with the defendant, Parker. The plaintiff, however, fails to support his allegations with evidence that raises any genuine issue of material fact. In his sworn deposition testimony, the plaintiff refers to occasions on which the defendant Eagle Snacks' agent, Edward Mangine, assisted him in the purchase of Electra Snacks by telling him what he needed to do to get Eagle Snacks' approval of the sale. (Memorandum of law in support of defendant's motion, Exh. B, p. 150, 11.4-21.) The plaintiff does not, however, aver in either his complaint or in his memorandum in opposition to the defendant Eagle Snacks' motion for summary judgment that Eagle Snacks, through Edward Mangine, was guilty of fraud, misrepresentation, intimidation or molestation, or that the defendant acted maliciously. See Daley v. Aetna Life Casualty Co.,
supra, 249 Conn. 805-06. The plaintiff fails to point to any actions by CT Page 10895 Eagle Snacks that could be construed as tortious.
Furthermore, the plaintiff's fails to plead or prove that he suffered an actual loss due to Eagle Snacks' alleged interference. "[lit is anessential element of the tort of unlawful interference with business relations that the plaintiff suffered actual loss." (Emphasis in original.) (Internal quotation marks omitted.) Dinapoli v. Cooke, supra,43 Conn. App. 426. In his complaint, the plaintiff states that he "had a reasonable expectation that he would have recovered a substantial profit had he purchased Electra as he had previously overseen its operations in the two years prior to his wrongful discharge and had realized a reasonable profit each year." (Complaint, count fifteen, ¶ 15.) Such losses are speculative.
The plaintiff's pleadings and proof fail to raise a genuine issue of material fact as to whether Eagle Snacks tortiously interfered with the plaintiff's business relations. Accordingly, Eagle Snacks' motion for summary judgment on count fifteen of the complaint is granted.
For the foregoing reasons this court grants the defendant Parker's motion for summary judgment on counts two, four and seven; the defendant Augustitus' motion for summary judgment on counts eight and nine; and the defendant Eagle Snacks' motion for summary judgment on counts twelve, thirteen and fifteen of the complaint. This court denies Parker's motion for summary judgment on counts three, five and six; Augustitus' motion for summary judgment on count ten; and Eagle Snacks' motion for summary judgment on count eleven of the complaint because the plaintiff raises genuine issues of material fact and the defendants are not entitled to judgment as a matter of law on these counts of the complaint.
Howard F. Zoarski Judge Trial Referee